UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DERRICK KIDD,                                    Case No. 1:13-cv-867
        Petitioner,


                                                 Bertelsman, J.
        vs.                                      Litkovitz, M.J.


WARDEN, LONDON                           REPORT AND RECOMMENDATION
CORRECTIONAL INSTITUTION,
        Respondent.


        In this *pro se* habeas corpus action filed pursuant to 28 U.S.C. § 2254, petitioner, who is

incarcerated at the London Correctional Institution in London, Ohio, challenges his conviction

and sentence following his entry of guilty pleas to two counts of robbery in Hamilton County,

Ohio, Court of Common Pleas Case No. B1000154. (*See* Doc. 1).  On January 21, 2015, the

District Court adopted the undersigned's Report and Recommendation to deny the respondent's

motion to dismiss the petition.  (Doc. 20; *see also* Doc. 16).  In the meantime, in accordance with

orders issued by this Court on December 31, 2013 and December 10, 2014 (*see* Doc. 4; Doc. 16,

p. 17, at PAGEID#: 220), respondent filed a return of writ responding to the petition and

supplemented the record with the transcript of the state trial proceedings.  (Docs. 18-19).  This

matter is now before the Court for ruling on the petition in light of the return of writ and state

court record, as supplemented.[1]

_____

        [1] The state court record provided by respondent includes not only the trial transcript filed January 7, 2015
(Doc. 18), but also documents attached as exhibits to respondent's motion to dismiss filed in March 2014.  (*See* Doc.
7, Exhibits 1-29).

## I.  PROCEDURAL HISTORY

### A.  State Court Proceedings

The general procedural history of the state court proceedings is set forth in the undersigned's December 10, 2014 Order and Report and Recommendation addressing respondent's motion to dismiss and is incorporated by reference herein.  (*See* Doc. 16, pp. 1-5, at PAGEID#: 204-08).

### Trial Proceedings

In summary, petitioner was charged in Case No. B1000154 with three counts of robbery and one count of cocaine possession.  (Doc. 7, Ex. 2).  The robbery charges stemmed from separate offenses involving different victims that occurred at the Wright-Patt Credit Union in Norwood, Ohio, on December 30, 2009, January 5, 2010 and January 12, 2010.  (*See id.*).  The matter proceeded to trial before the court.  (*See* Doc. 18, Trial Tr. 243, at PAGEID#: 320). However, on the second day of trial, after four witnesses had presented testimony for the State, petitioner entered a guilty plea in accordance with *North Carolina v. Alford*, 400 U.S. 25 (1970), to two of the robbery charges (Counts 1 and 4) in exchange for the dismissal of the other two counts and another criminal indictment for a shoplifting offense that had been brought against petitioner in the Hamilton County Court of Common Pleas (Case No. B1000320). [2] (*See id.*, Trial Tr. 460, 479, at PAGEID#: 686, 705; *see also* Doc. 7, Ex. 3).

The written plea agreement that was executed by the parties and filed with the trial court provided in pertinent part that petitioner faced a prison sentence of two to eight years on each

---

[2] Upon review of the Hamilton County Clerk's on-line docket record for Case No. B1000320, it appears that petitioner was charged in that case with one count of theft in violation of Ohio Rev. Code § 2913.02(A)(1) based on an incident that occurred at a Walmart store on January 8, 2010 where property worth $500 or more was stolen.

2

robbery count and that petitioner understood "the maximum penalty as set out above."  (Doc. 7, Ex. 3).  The agreement did not contain any mention of an agreed-to sentence or a joint recommendation regarding the sentence to be imposed.  At the plea hearing held on February 9, 2012, petitioner affirmed to the court that he had a chance to review the document and had discussed it with his attorney.  (Doc. 18, Trial Tr. 461-62, at PAGEID#: 687-88).  The following colloquy then ensued:

> THE COURT:  Now, keep in mind, you and I will discuss your plea agreement thoroughly.  As we do so, if you have a question or concern, don't hesitate to make me aware of your question or concern.  I want you to be very clear about what it is you are pleading guilty to.
>
> ****
>
> Your plea of guilty to Count 1 is a plea of guilty to a charge of robbery, a felony of the second degree, for which under the law you could be sentenced anywhere from two years to eight years in prison and given up to $15,000 fine.  There is no mandatory prison term.  There is no mandatory fine.
>
> In Count 4, you are pleading guilty for the charge of robbery, felony of the second degree.  Potentially, you could be sentenced anywhere from two years to eight years in prison and given up to a $15,000 fine.  Again, there is no mandatory prison sentence, there is no mandatory fine.
>
> Do you understand what I mean when I speak of "mandatory"?
>
> THE DEFENDANT:  Yes, sir.  Like a gun spec time deal.
>
> THE COURT:  No.  What mandatory means, I don't have discretion if it's mandatory.  If it is not mandatory, I have discretion with regard to the sentence.
>
> THE DEFENDANT:  Okay.
>
> THE COURT:  Even though it is not mandatory, what you should know is for a felony of the second degree, there is a presumption of prison.   So the likelihood is you are going to get a prison sentence.  Do you understand?
>
> THE DEFENDANT:  Yes, sir.

3

THE COURT:  It's not mandatory, but there is a presumption.  And based on what I have heard so far at trial, I don't think there is anything to overcome the presumption of prison.  Do you understand?

THE DEFENDANT:  Yes, sir.

THE COURT:  So I want you to look forward to a prison sentence.

THE DEFENDANT:  All right.

THE COURT:  Now, do you fully understand what you are pleading guilty to in Counts 1 and 4?

THE DEFENDANT:  Yes.

THE COURT:  Do you understand the possible penalties with regards to Counts 1 and 4?

THE DEFENDANT:  Yes.

THE COURT:  With those understandings, do you still wish to go forward with your pleas of guilty?

THE DEFENDANT:  Yes. . . .

(*Id.*, Trial Tr. 462-64, at PAGEID#: 688-90).  At that point, petitioner indicated that he did have a question to ask his attorney, and the record reflects that the two conferred off the record until counsel stated that petitioner was "[a]ll set" to proceed with the plea colloquy.  (*Id.*, Trial Tr. 464-65, at PAGEID#: 690-91).

Later in the proceeding, before accepting petitioner's guilty pleas to the two robbery counts, the court stated that it would not be sentencing petitioner that day and that, instead, sentencing would occur at a later time so that a presentence investigation report and victim impact statement could be prepared and provided to the court for consideration in deciding the appropriate sentence.  (*See id.*, Trial Tr. 472, at PAGEID#: 698).  Thereafter, following the in-

4

depth discussion of the portion of the plea agreement containing petitioner's statements of understanding, petitioner was asked if he had "any questions at all up to this point." (*Id.*, Trial Tr. 474, at PAGEID#: 700).  Petitioner responded that he had only "one question" pertaining to his eligibility for judicial release. (*Id.*, Trial Tr. 475, at PAGEID#: 701).  When that question was answered, petitioner stated that he did not have "any other questions." (*Id.*, Trial Tr. 476, at PAGEID#: 702).  At the close of the hearing, after the State read a statement of facts in support of the two robbery charges into the record, petitioner entered his guilty pleas to those charges. (*Id.*, Trial Tr. 479, at PAGEID#: 705).  The court accepted petitioner's guilty pleas "as tendered" and referred the matter for a presentence investigation report and a victim impact statement. (*Id.*, Trial Tr. 480, at PAGEID#: 706).

Petitioner's sentencing hearing was held over a month later, on March 21, 2012. (*Id.*, Trial Tr. 483, at PAGEID#: 709).  At that hearing, the State requested that an aggregate 12-year sentence be imposed, but also deferred to defense counsel's position that the prosecuting attorney had indicated "more than once" during the plea negotiations that "the State would be satisfied with eight years if the Court was going to impose a prison sentence." (*Id.*, Trial Tr. 498-99, at PAGEID#: 724-25).  Defense counsel argued for an even further reduced sentence of a "two-year split" term, but also acknowledged that the court was "free to pass whatever sentence" it believed "to be appropriate." (*See id.*, Trial Tr. 490-92, 500, at PAGEID#: 716-18, 726).  The court agreed, stating:  "Let's be very clear on the record.  There is no plea negotiation[] here with the court." (*Id.,* Trial Tr. 500, at PAGEID#: 726).

The court proceeded to first consider petitioner's "affidavit of indigency," wherein petitioner indicated that he had "no funds or resources from which to pay any fines or court

costs." (*Id.*, Trial Tr. 500-01, at PAGEID#: 726-27). In response to questions posed by the court,

petitioner stated that he had a "G.E.D." degree and affirmed that he hoped to "become a teacher"

and "to have an income in the future" after serving "whatever sentence the Court imposes." (*Id.*,

Trial Tr. 501, at PAGEID#: 727). Following that discussion, the court found that petitioner was

"presently unable to pay a fine," but because petitioner had "a future potential," the imposition of

court costs would not be suspended. (*Id.*, Trial Tr. 502, at PAGEID: 728).

The court next addressed the prison sentence to be imposed. The court acknowledged that

petitioner was an unmarried, unemployed father of four who had been placed in custody while

awaiting trial. (*Id.*, Trial Tr. 505-06, at PAGEID#: 731-32). The court continued:

> His prior adult record consist[s] of convictions in Montgomery County, Ohio for
> attempted drug abuse, escape, receiving stolen property, criminal trespass,
> domestic violence, petty theft four times, robbery, and bank robbery.
>
> This defendant has served five separate prison terms in the State of Ohio between
> 1994 and 2000. From 2002 to 2008, the defendant served a Federal Prison
> sentence for bank robbery.
>
> This defendant is considered a high risk to reoffend, and the victims herein request
> the maximum sentence.

(*Id.*, Trial Tr. 506, at PAGEID#: 732).

The court then announced that it was sentencing petitioner as requested by the victims to

consecutive maximum prison terms of eight (8) years for each robbery offense, or an aggregate

prison term of sixteen (16) years, with 790 days of credit for time served. (*Id.*, Trial Tr. 506-07,

at PAGEID#: 732-33). The court also ordered petitioner "to pay the cost of this prosecution."

(*Id.*, Trial Tr. 507, at PAGEID#: 733). Defense counsel objected to "the maximum consecutive

sentence" and asked that counsel be appointed to represent petitioner for appeal purposes. (*Id.*,

6

Trial Tr. 507-08, at PAGEID#:  733-34).  However, neither the attorney nor petitioner, who was

provided the opportunity to be heard, suggested that the plea agreement was rendered invalid by

the sentence that was imposed.  The final judgment entry sentencing petitioner to the aggregate

16-year prison term and ordering petitioner "to pay the court costs of this prosecution" was filed

on March 22, 2012.  (Doc. 7, Ex. 1).

## Direct Appeal And Application To Reopen Appeal

As discussed in the December 10, 2014 Order and Report and Recommendation (*see* Doc.

16, p. 2, at PAGEID#: 205), petitioner pursued a timely appeal to the Ohio Court of Appeals,

asserting as the sole assignment of error that the trial court abused its discretion under state law in

sentencing him to consecutive maximum terms of imprisonment for the two robbery offenses.

(*See* Doc. 7, Ex. 7).  The Ohio Court of Appeals overruled the assignment of error, reasoning in

pertinent part as follows:

> Here, all sentences imposed by the trial court fell within the available statutory
> ranges.  And the trial court completed a felony-sentencing worksheet on which it
> made the findings required by 2011 Am.Sub.H.B. No. 86 ("H.B. 86") to support
> the imposition of consecutive sentences.  With respect to the findings required by
> H.B. 86, we have previously held that the use of a sentencing-findings worksheet
> to document the findings ensures compliance with the findings requirement and
> meaningful appellate review. . . . Kidd's sentence was not contrary to law.  Nor
> can we determine, in light of Kidd's extensive criminal record and the fact that he
> committed more than one bank robbery in this case, that the trial court abused its
> discretion in the imposition of sentence.

(*Id.*, Ex. 9).[3]

Thereafter, on March 12, 2013, petitioner filed a *pro se* application under Ohio R. App. P.

---

[3] As discussed in the December 10, 2014 Order and Report and Recommendation (*see* Doc. 16, pp. 2-3, at
PAGEID#: 205-06), petitioner failed to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of
Appeals' direct appeal decision, and the Ohio Supreme Court denied his motion for delayed appeal.  (*See* Doc. 7,
Exs. 10-12).

26(B) for reopening of the appeal with the Ohio Court of Appeals. (*Id.*, Ex. 13). In the

application, petitioner contended that his appellate counsel was ineffective for failing to

"federalize" the state-law sentencing-error claim that had been raised on direct appeal and for

failing to assert additional assignments of error challenging, among other things, "the trial court's

imposition of court costs" and the ineffectiveness of petitioner's trial counsel for not seeking to

withdraw petitioner's guilty pleas after the trial court imposed an aggregate prison sentence that

was "double the eight years recommended by the State and . . . agreed to by both defense counsel

and the State when [petitioner] pled guilty." (*Id.*).

The Ohio Court of Appeals overruled petitioner's reopening application on the ground that

it was untimely filed. (*Id.*, Ex. 14). Petitioner moved for reconsideration, arguing that his

reopening application was timely because he "submitted his paperwork to the institutional mail

room on the 4th day of March, 2013, providing ample time for his motion to be received in the

court prior to the due date for filing on the 7th day of March, 2013." (*Id.*, Ex. 15). On May 30,

2013, the Ohio Court of Appeals denied petitioner's motion for reconsideration without opinion.

(*Id.*, Ex. 18). Although petitioner pursued a timely appeal to the Ohio Supreme Court, the court

"decline[d] to accept jurisdiction of the appeal." (*Id.*, Exs. 19-22).

### Motion To Withdraw Guilty Pleas

On July 1, 2013, while his appeal from the denial of his reopening application was

pending before the Ohio Supreme Court, petitioner filed a *pro se* motion to withdraw his guilty

pleas with the Hamilton County Common Pleas Court. (Doc. 7, Ex. 23). Petitioner essentially

claimed in the motion that his guilty pleas were invalid because his counsel led him to believe that

"he would receive a sentence of not more than eight (8) years" by entering the plea agreement.

8

(*Id.*, p. 3).  Petitioner submitted only his own affidavit as evidentiary support for the claim.  (*See id.*, "Affidavit of Derrick Kidd").   On July 15, 2013, the trial court overruled petitioner's motion without a hearing or opinion.  (*Id.*, Ex. 24).  Petitioner timely appealed to the Ohio Court of Appeals.  (*See id.*, Exs. 25-26).  As discussed in the December 10, 2014 Order and Report and Recommendation (*see* Doc. 16, p. 5 & nn.1-2, at PAGEID#: 208), the Ohio Court of Appeals issued a decision on February 26, 2014 affirming the trial court's judgment.  Petitioner did not appeal further to the state's highest court.

### B.  Federal Habeas Corpus Petition

In the instant federal habeas action, petitioner alleges the following grounds for relief:

**Ground One:**  Petitioner was deprived of the effective assistance of counsel on direct appeal in violation of the Sixth and Fourteenth Amendments.

**Supporting Facts:**  Appellate counsel failed to federalize the sole assignment of error raised regarding disparate sentencing; failed to argue that the imposition of court costs without notice or opportunity to be heard violated due process of law[;] and failed to raise ineffective trial counsel for failing to seek withdrawal of the *Alford* plea when the trial court doubled the promised and agreed sentence.

**Ground Two:**  The imposition of court costs without notice or opportu[n]ity to be heard violates due process of law.

**Supporting Facts:**  The trial court imposed thousands of dollars in court costs in its entry, but did not do so in open court, thus depriving Petitioner of any opportunity for notice or to be heard.

**Ground Three:**  Petitioner was depr[iv]ed of the effective assistance of counsel at trial in violation of the Sixth and Fourteenth Amendments.

**Supporting Facts:**  Trial counsel failed to seek to withdraw the *Alford* Plea in this case when the trial court disregarded the promised and agreed eight (8) year sentence and instead doubled it.  This adversely affected the proceedings to Petitioner's prejudice.

(Doc. 1).

9

Respondent initially responded to the petition by filing a motion to dismiss the petition on the ground that petitioner's claims for relief were barred from review as a result of procedural defaults that had occurred in the state courts. (Doc. 7). On December 10, 2014, the undersigned issued an Order and Report and Recommendation recommending that the motion to dismiss be denied. (Doc. 16). In ruling on the motion, the undersigned agreed with respondent that (1) "to the extent the claims alleged in Grounds Two and Three of the petition are based on evidence contained in the trial record, petitioner committed a double [procedural] default" by first failing to raise the claims as assignments of error on direct appeal and then failing "to pursue a timely appeal to the Ohio Supreme Court, which later refused to grant him a delayed appeal"; (2) to the extent the claim alleged in Ground Three "is based on evidence outside the record or was otherwise raised by petitioner in his motion to withdraw guilty plea filed on July 1, 2013 . . ., petitioner defaulted the claim by failing to pursue an appeal to the Ohio Supreme Court from the Ohio Court of Appeals' February 26, 2014 decision affirming the trial court's denial . . . of his motion to withdraw plea"; and (3) petitioner procedurally defaulted the ineffective-assistance-of-appellate-counsel claim alleged in Ground One of the petition and as "cause" for his default of the claims alleged in Grounds Two and Three because the claim was asserted in an untimely reopening application that was denied as belatedly filed. (*Id.*, pp. 9-11, at PAGEID#: 212-14).

The undersigned next considered whether petitioner had demonstrated cause for and prejudice from the defaults or the existence of a "fundamental miscarriage of justice" sufficient to excuse the procedural bar to federal habeas review of his claims. It was determined in respondent's favor that petitioner had not shown that a "fundamental miscarriage of justice" will occur if his defaulted claims are not considered by this Court or that cause exists to excuse the

10

procedural defaults that occurred in the appeal proceedings or in the proceedings on his motion to

withdraw his guilty plea.  (*See id.*, pp. 11-12, 14, at PAGEID#: 214-15, 217).  Nevertheless, it

was recommended that the motion to dismiss be denied for two reasons:  (1) a close question was

presented as to whether cause exists for the procedural default that occurred in the state reopening

proceedings; and (2) in the absence of the trial transcript, which had not yet been filed, the Court

could not evaluate the merits of petitioner's ineffective-assistance-of-appellate-counsel claim.

(*See id.*, pp. 15-17, at PAGEID#: 218-20).  Respondent was, therefore, ordered to file a return of

writ responding to the allegations of the petition and to supplement the record with, among other

things, the trial transcript.  (*Id.*, p. 17, at PAGEID#: 220).  Respondent was also instructed that

"although dismissal on waiver grounds is not appropriate at this early stage in the proceedings,

respondent is not precluded from reasserting the procedural bar to review as a defense in the

return of writ."  (*Id.*).  As discussed earlier, the Report and Recommendation was adopted by the

District Court on January 21, 2015.  (Doc. 20).

Respondent filed the return of writ and supplemented the record in accordance with this

Court's order.  (Docs. 18-19).   Although petitioner was provided an opportunity to respond to the

return of writ (*see* Doc. 16, pp. 17-18, at PAGEID#: 220-21), he has yet to file a responsive

pleading.  Because the deadline for doing so has long since passed, the matter is now ripe for final

disposition.

## II.  OPINION

### Petitioner Is Not Entitled To Habeas Relief Because The Ineffective-Assistance-Of Appellate-Counsel Claim Alleged In Ground One And As Cause For Petitioner's Procedural Default Of The Claims Alleged In Grounds Two and Three Lacks Merit

Petitioner has alleged that he was denied the effective assistance of appellate counsel in

11

Ground One of the petition. (*See* Doc. 1). Petitioner has also suggested in Ground One that the

defaulted trial-error claims alleged in Grounds Two and Three of the petition are subject to review

on the merits by this Court because the ineffectiveness of his appellate counsel in failing to assert

those claims as assignments of error on direct appeal excuses the procedural default that occurred

in the state appeal proceedings.[4] (*See id.*; *see also* Doc. 16, pp. 10, 15-17, at PAGEID#: 213, 218-

20). *See generally Murray v. Carrier,* 477 U.S. 478, 488 (1986) (holding that the ineffective

assistance of counsel may constitute cause for a procedural default).

To establish that his appellate attorney was ineffective, petitioner must demonstrate that

(1) counsel made such serious errors he was not functioning as "counsel" guaranteed by the Sixth

Amendment; and (2) the allegedly deficient performance prejudiced the defense. *Strickland v.*

*Washington,* 466 U.S. 668, 687 (1984). Under the first prong of the *Strickland* test, petitioner

must show that appellate counsel's representation fell below an objective standard of

reasonableness based on all the circumstances surrounding the case. *Id.* at 688. Judicial scrutiny

must be highly deferential, and a "fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight" and to evaluate the challenged

conduct from counsel's perspective at the time the conduct occurred. *Id.* at 689. In determining

whether or not counsel's performance was deficient, the Court must indulge a strong presumption

that the challenged conduct fell within the wide range of reasonable professional assistance. *Id.*

---

[4] It is noted that the argument for excusing petitioner's procedural default in the state appeal proceedings only serves as a justification for the default of claims alleged in Grounds Two and Three that are based on the record. As discussed in the December 10, 2014 Order and Report and Recommendation that has been adopted by the District Court (*see* Doc. 16, pp. 11-12, at PAGEID#: 214-15), to the extent that the claim alleged in Ground Three is based on evidence outside the record or was raised by petitioner in his motion filed in July 2013 to withdraw his guilty pleas, the claim was procedurally defaulted when petitioner failed to pursue an appeal to the Ohio Supreme Court after the Ohio Court of Appeals affirmed the trial court's denial of his motion to withdraw his guilty pleas; petitioner has not provided any explanation or argument to excuse that default in the state courts.

Appellate counsel is not constitutionally ineffective under this prong merely because he declines to raise a non-frivolous issue on appeal that was requested by the defendant. *See Jones v. Barnes,* 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a constitutional right to compel appointed counsel to press nonfrivolous points [on appeal] requested by the client"). As the Supreme Court stated in *Barnes,* 463 U.S. at 754:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the very goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes,* 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001). It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different. *See Strickland,* 466 U.S. at 694. Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

13

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner has made an insufficient showing on either ground. *Id.* at 697.

In this case, petitioner's claim of ineffective assistance is based on allegations that his appellate counsel should have "federalize[d]" the state-law sentencing-error claim that was asserted as the sole assignment of error on direct appeal and should have presented the claims alleged in Grounds Two and Three of the petition as additional assignments of error. (*See* Doc. 1). Upon review of the record, the undersigned concludes that none of these allegations has merit.

First, petitioner has not demonstrated that his appellate counsel was ineffective for failing to "federalize" the state-law sentencing-error claim that was presented on direct appeal. As the Ohio Court of Appeals found in rejecting the state-law claim (*see* Doc. 7, Ex. 9), the sentences that were imposed for the two robbery offenses "fell within the available statutory ranges" established by Ohio law. Therefore, no federal constitutional concerns are triggered to the extent that the trial court in the exercise of its discretion imposed the maximum sentence allowed under state law for those offenses. Moreover, the imposition of consecutive sentences for two separate robbery offenses involving different victims does not implicate any constitutional concerns under the Fifth Amendment's Double Jeopardy Clause, *see, e.g.*, *Collins v. Brunsman*, No. 1:08-cv-217, 2009 WL 1675919, at *1, *7 (S.D. Ohio June 12, 2009) (Barrett, J.; Black, M.J.) (and cases cited therein); the Eighth Amendment's Cruel and Unusual Punishment Clause, *see, e.g.*, *Scott v. Warden, Southern Ohio Corr. Facility*, No. 1:12-cv-118, 2013 WL 2096641, at *8-9 (S.D. Ohio May 14, 2013) (Bowman, M.J.) (Report & Recommendation) (citing *Graham v. Florida*, 560

14

U.S. 48, 59-60 (2010); *United States v. Moore*, 643 F.3d 451, 454 (6th Cir. 2011); *United States v. Hughes*, 632 F.3d 956, 959 (6th Cir. 2011)), *adopted*, 2013 WL 5728675 (S.D. Ohio Oct. 22, 2013) (Bertelsman, J.); or the Sixth Amendment, *see Oregon v. Ice*, 555 U.S. 160, 167-72 (2009). In the wake of *Ice*, the Ohio legislature enacted a statute effective September 30, 2011 reviving some state sentencing provisions governing consecutive sentencing that had previously been erroneously severed as unconstitutional under the Sixth Amendment.  *See State v. Bonnell*, 16 N.E.3d 659, 660-61 (Ohio 2014).  Specifically, the "legislation created a statutory presumption in favor of concurrent sentences and further directed courts to make statutorily enumerated findings prior to imposing consecutive sentences, but it did not require courts to give reasons in support of its findings."  *Id.* at 661.  Given that, as a matter of state law, the Ohio legislature reenacted limits on the trial court's discretion in imposing consecutive sentences that are neither constitutionally mandated nor trigger any federal constitutional concerns, it was reasonable for petitioner's appellate counsel to rely solely on state law as the strongest argument for challenging petitioner's sentence in this case.

Second, petitioner has not demonstrated that his appellate counsel was ineffective for failing to assert as an assignment of error the claim alleged in Ground Two of the petition challenging the imposition of court costs as part of petitioner's sentence.  Contrary to petitioner's contention in the petition, the issue of court costs was expressly addressed at petitioner's sentencing hearing where petitioner was questioned and provided an opportunity to be heard on his "affidavit of indigency."  (*See* Doc. 18, Trial Tr. 500-02, at PAGEID#: 726-28).  Also, contrary to petitioner's contention, the record does not contain any suggestion that the court costs imposed in the sentencing entry amounted to "thousands of dollars" or that petitioner was

15

otherwise unable to fulfill the payment obligation. (*See id.*, Trial Tr. 502, 507, at PAGEID#: 728,

733; Doc. 7, Ex. 1). It appears from the record that the trial court determined that court costs

could be imposed because petitioner himself had indicated in response to the court's questions

that he had a "future potential" to obtain an income. Therefore, in the absence of any evidence in

the record even remotely suggesting that petitioner had a viable argument for challenging the

imposition of court costs, appellate counsel did not act unreasonably in failing to raise the matter

as an issue for consideration on direct appeal.

Finally, petitioner has not demonstrated that his appellate counsel was ineffective for

failing to assert as an assignment of error the ineffective-assistance-of-trial-counsel claim alleged

in Ground Three of the petition. It is petitioner's position that the parties had agreed to an 8-year

prison sentence as part of their plea bargain and, therefore, that his trial counsel should have

moved to withdraw his guilty pleas when the trial court imposed the aggregate16-year prison

sentence. However, the record provides no support for petitioner's position. Indeed, appellate

counsel could have reasonably concluded upon review of the record that the parties' plea

agreement did not include a joint recommended sentence and that petitioner could not have

entered his guilty pleas based on any expectation about the sentence he would ultimately receive.

The written plea entry executed by the parties and filed with the court contained no statement

about any agreed-to sentence, but rather provided only that petitioner faced a prison sentence of

between a minimum of two years and a maximum of eight years for each robbery offense. (*See*

Doc. 7, Ex. 3). Moreover, at the plea hearing, the court made it clear that it had discretion to

sentence petitioner to a prison term "anywhere" between two to eight years for each robbery

offense; that petitioner should expect a prison sentence based on evidence that had been presented

16

at the bench trial; and that no sentence would be determined until after a presentence investigation report and victim impact statement had been prepared and provided for the court's consideration in deciding the appropriate sentence. (*See* Doc. 18, Trial Tr. 462-64, 472, at PAGEID#: 688-90, 698). At the subsequent sentencing hearing, defense counsel argued for imposition of a "two-year split sentence" while the State recommended that an aggregate 12-year prison sentence be imposed, which further belies petitioner's contention that the parties' plea bargain included an agreement to an 8-year sentence. (*See id.*, Trial Tr. 490-92, 498-99, at PAGEID#: 716-18, 724-25). Although recognizing the trial court had discretion to impose any sentence within the statutory range that it deemed appropriate, petitioner's counsel effectively advocated for petitioner by pointing out that although the State recommended a 12-year term of imprisonment at the sentencing hearing, the prosecuting attorney had indicated in plea negotiations that an 8-year prison sentence would be acceptable. (*See id.*, Trial Tr. 498-500, at PAGEID#: 724-26). Trial counsel also effectively represented petitioner by calling witnesses to testify in mitigation of sentence, by presenting arguments in support of only a "two-year split sentence," by objecting to the 16-year sentence that was ultimately imposed, and by asking that counsel be appointed for appeal purposes to contest that sentence. (*See id.*, Trial Tr. 485-92, 507-08, at PAGEID#: 711-18, 733-34). Because it appears from the trial record that petitioner was not deprived of his Sixth Amendment right to effective assistance by his trial attorney, appellate counsel's failure to assert an ineffective-assistance-of-trial-counsel claim on direct appeal did not fall outside the wide range of reasonable professional assistance or prejudicially affected the outcome of the appeal.

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated he is entitled to federal habeas relief based on the ineffective-assistance-of-appellate-counsel claim

alleged in Ground One of the petition. Because the claim alleged in Ground One lacks merit, petitioner has also not demonstrated that cause exists to overcome the procedural bar to review of the trial-error claims alleged in Grounds Two and Three of the petition, which were procedurally defaulted by petitioner in the state courts. In any event, for the reasons given above in rejecting petitioner's ineffective-assistance-of-appellate-counsel claim, petitioner has not demonstrated that there is any merit to the underlying trial-error claims alleged in Grounds Two and Three of the petition.[5]

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims for relief alleged in Grounds Two and Three of the petition, which this Court has concluded are barred from review on a procedural ground, because under the applicable two-part standard enunciated in Slack v. *McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason" would neither find it debatable whether the Court is correct in its procedural ruling nor find it debatable whether petitioner has stated a viable constitutional claim in those grounds for relief. In addition, a

---

[5] It is further noted that the claim alleged in Ground Two challenging the imposition of court costs does not state a cognizable claim for federal habeas relief. *Cf. Washington v. McQuiggin,* 529 F. App'x 766, 772 (6th Cir. 2013) (and cases cited therein) (in holding that the federal habeas court lacked subject matter jurisdiction to consider petitioner's claim challenging the portion of his sentence requiring him to pay his court-appointed counsel's fees, the Sixth Circuit pointed out by way of analogy that "fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the 'in custody' requirement of a cognizable habeas claim" and that "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens to be subject to custodial penalties"), *cert. denied*, 134 S.Ct. 916 (2014); *see also Bailey v. Hill,* 599 F.3d 976, 979-84 (9th Cir. 2010) (and cases cited therein) (involving restitution order imposed as part of the criminal sentence); *King v. Booker*, No. 2:11cv13676, 2014 WL 2587638, at *10-11 (E.D. Mich. June 10, 2014) (same); *see also Boadway v. Ludwick*, No. 2:09cv12328, 2011 WL 5107599, at *10 (E.D. Mich. Oct. 27, 2011) (relying on precedents involving habeas challenges to fines in holding that a "challenge to the trial court's imposition of costs is not a cognizable claim upon habeas review").

certificate of appealability should not issue with respect to the claim alleged in Ground One of the petition, which was addressed on the merits herein, in the absence of a substantial showing that petitioner has stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further." *See Slack,* 529 U.S. at 475 (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 4/10/15

Karen L. Litkovitz
United States Magistrate Judge

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DERRICK KIDD,
      Petitioner,

      vs

WARDEN, LONDON
CORRECTIONAL INSTITUTION,
      Respondent.

Case No. 1:13-cv-867

Bertelsman, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections WITHIN 14 DAYS after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc

20